**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**John Charles Richard MENTZ,**
**Defendant–Appellant.**

**No. 87–3286.**

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 23, 1987.

Decided Feb. 22, 1988.

Joseph W. Gibson, argued, Hershey & Browne, Akron, Ohio, for defendant-appellant.

Thomas M. Bauer, Asst. U.S. Atty., Akron, Ohio, Carla D. Moore, argued, Cleveland, Ohio, for plaintiff–appellee.

Before GUY, NELSON, and BOGGS, Circuit Judges.

BOGGS, Circuit Judge.

John Mentz was convicted of two counts of bank robbery, in violation of 18 U.S.C.

§ 2113(a)(1982).[1] He was found guilty of robbing the Society National Bank on August 4, 1986, and the First National Bank of Ohio four days later. On appeal, Mentz raises two issues for our consideration. First, he contends that the district court's jury instruction improperly removed an essential element of the bank robbery charge from the jury's consideration. Second, he contends that he was not brought to trial within the time limits set by the Speedy Trial Act, 18 U.S.C. §§ 3161–74 (1982). Finding merit to Mentz's contentions, we reverse.

We proceed directly to Mentz's contentions, supplementing our discussion with those facts necessary for proper resolution of the issues.

## I. JURY INSTRUCTION: FDIC INSURANCE.

### A

In order to convict Mentz of bank robbery in violation of 18 U.S.C. § 2113(a), the government must prove "that the deposits of the financial institution robbed [were] insured by the FDIC [Federal Deposit Insurance Corporation] at the time of the robbery. 18 U.S.C. § 2113(f)." *United States v. Wood,* 780 F.2d 555, 556 (6th Cir.), *cert denied,* 475 U.S. 1111, 106 S.Ct. 1522, 89 L.Ed.2d 920 (1986). *See also United States v. Sliker,* 751 F.2d 477, 483 (2d Cir.1984), *cert. denied sub nom. Buchwald v. United States,* 470 U.S. 1058, 105 S.Ct. 1772, 84 L.Ed.2d 832 (1985); *United States v. Taylor,* 728 F.2d 930, 933 (7th Cir.1984); *United States v. Glidden,* 688 F.2d 58, 59 (8th Cir.1982) ("Federally insured status is an essential element of a violation under § 2113(a) and must therefore be established by the government."). In support of this statutory obligation, the government produced two witnesses. Lane Orem, Security Administrator for the First National Bank, testified that the bank's branches, including the one robbed, were federally insured. He produced the bank's FDIC certificate, dated 1985. The second witness was Richard Fisher, a security officer for the Society National Bank. He identified a letter from the FDIC, dated January 1985, certifying that the particular branch involved in the robbery was federally insured. He testified that in his eighteen years of service with the bank he was not aware of any cancellation of FDIC insurance.[2]

At the close of the government's case, Mentz moved for dismissal of the charges, arguing that the evidence failed to establish that the banks were FDIC insured at the time the robberies occurred. The motion was denied.[3]

In his charge to the jury, which we set out at some length, the district court stated:

> Thus the government is required to prove the following essential elements for each of the three counts of the indictment.
>
> These elements must be proven beyond a reasonable doubt in order to warrant your finding of guilt in this case. They are, one, the identity of the defendant as the person who committed the crime or crimes charged in the indictment.
>
> Two, the act or acts of taking from the person or presence of another money belonging to or in the case, custody, and control, management, or possession of the banks as charged in the indictment.
>
> Three, the act or acts of taking such money by force or violence or by means of intimidation.
>
> *Your* [sic] *instructed that the First National Bank of Akron and Society National Bank are banking organizations, excuse me, institutions organized and operating under the law of the United States, and each is a bank whose deposits were insured by the Federal Deposit Insurance Corporation at*

---

1. Mentz was sentenced to seventeen years on each count, to be served concurrently.

2. The district court admitted these documents into evidence over defense counsel's objection.

3. Mentz renewed the motion after presenting his defense.

*the time of the offenses alleged in the indictment.* (emphasis added)

Mentz's counsel objected to this charge.

Mentz argues that the district court's charge improperly removed from the jury's consideration an essential element of 18 U.S.C. § 2113(a), that the banks were FDIC insured on the dates the crimes occurred. While Mentz does not couch his argument in constitutional terms, we understand his main contention to be that the district court relieved the government of proving beyond a reasonable doubt every essential element of the bank robbery charge. We agree.

██ The Sixth Amendment to the Constitution guarantees to a defendant the opportunity for a jury to decide guilt or innocence. *Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). A necessary corollary is the right to have one's guilt determined only upon proof beyond the jury's reasonable doubt of every fact necessary to constitute the crime charged. *See In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). *See also Francis v. Franklin,* 471 U.S. 307, 309, 105 S.Ct. 1965, 1968, 85 L.Ed.2d 344 (1985); *Sandstrom v. Montana,* 442 U.S. 510, 520, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); *Patterson v. New York,* 432 U.S. 197, 210, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977).[4] As the Supreme Court stated in *Francis v. Franklin,* 471 U.S. at 313, 105 S.Ct. at 1970 (citations omitted), this right "protects the 'fundamental value determination of our society,' given voice in Justice Harlan's concurrence in *Winship,* 'that it is far worse to convict an innocent man than to let a guilty man go free.'" *Accord, Rose v. Clark,* 478 U.S. 570, 106 S.Ct. 3101, 3107, 92 L.Ed.2d 460 (1986) (the right "ensure[s] that only the guilty are criminally punished").

Regardless of how overwhelming the evidence may be, the Constitution delegates to the jury, not to the trial judge, the important task of deciding guilt or innocence.

[The jury's] overriding responsibility is to stand between the accused and a potentially arbitrary or abusive Government that is in command of the criminal sanction. For this reason, a trial judge is prohibited from entering a judgment of conviction or directing the jury to come forward with such a verdict, regardless of how overwhelming the evidence may point in that direction. The trial judge is thereby barred from attempting to override or interfere with the jurors' independent judgment in a manner contrary to the interests of the accused.

*United States v. Martin Linen Supply Co.,* 430 U.S. 564, 572–73, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977) (citations omitted). *See also United Brotherhood of Carpenters & Joiners of America v. United States,* 330 U.S. 395, 408, 67 S.Ct. 775, 91 L.Ed. 973 (1947).

██ In a criminal trial, the trial judge and the jury have well-defined roles, refined over many years of constitutional adjudication. The trial judge instructs the jury on the law applicable to the issues raised[5] and, in appropriate circumstances, may comment on the evidence. *United States v. White Horse,* 807 F.2d 1426, 1430 (8th Cir.1986); *United States v. Johnson,* 718 F.2d 1317, 1322, 1324–25 (5th Cir.1983) (en banc); 8A J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice ¶ 30.05, at 30–40 (1987). The jury then independently determines the facts, and applies the law to those facts, in reaching its fateful decision. *White Horse,* 807 F.2d at 1430; *Johnson,* 718 F.2d at 1325. *See also* 2 C. Wright, Federal Practice & Procedure § 485, at 711 (1982). However, the trial judge invades the jury's province when, instead of simply instructing on the law, he applies the law to facts he has determined.

Where a jury sits as the finder of fact in a criminal trial, the court's instructions to the jury concerning the necessary elements of the crime charged are the only means of assuring that the State is put to its burden of establishing every element of the crime.

---

**4.** This right is also a "matter of federal due process." *Berrier v. Egeler,* 583 F.2d 515, 521 (6th Cir.), *cert. denied sub nom. Warden v. Berrier,* 439 U.S. 955, 99 S.Ct. 354, 58 L.Ed.2d 347 (1978).

**5.** In *Glenn v. Dallman,* 686 F.2d 418, 421 (6th Cir.1982), this court said:

**320**

*See White Horse,* 807 F.2d at 1430 ("when the judge is no longer deciding the law that applies to the evidence, but rather is applying the law to the facts—facts that are determined after assessing the probative value of evidence introduced at trial—the judge has invaded the jury's province.").[6]

■ There can be little doubt that a trial judge commits error of constitutional magnitude "when he instructs the jury as a matter of law that a fact essential to conviction has been established by the evidence, thus depriving the jury of the opportunity to make this finding." *Id.* at 1429 (citation omitted). This is tantamount to a directed verdict for the prosecution, a result that is condemned by the Constitution. *Martin Linen Supply Co.,* 430 U.S. at 572–73, 97 S.Ct. at 1355; *United Brotherhood of Carpenters & Joiners of America,* 330 U.S. at 408, 67 S.Ct. at 782.

■ We now consider the district court's jury instruction, which we read in its entirety. *Francis v. Franklin,* 471 U.S. at 315, 105 S.Ct. at 1971; *Cupp v. Naughten,* 414 U.S. 141, 146–47, 99 S.Ct. 396, 38 L.Ed. 2d 368 (1973); *United States v. Mahar,* 801 F.2d 1477, 1498 (6th Cir.1986). We agree with Mentz that the trial judge invaded the jury's province by instructing that body, in clear and unequivocal language, that the banks were FDIC insured at the time the robberies occurred. His conclusive statement left no room for the jury to believe otherwise.[7] The judge improperly cast himself in the role of trier of fact, and directed a verdict on an essential element of the bank robbery charge.[8] His instructions had the effect of relieving the government of its burden of proving, beyond the

jury's reasonable doubt, that the accused committed the crimes charged. *See Glenn v. Dallman,* 686 F.2d 418, 421 (6th Cir. 1982) ("The Constitutional right to a jury puts the government to the burden of proving the essential elements of the crime to the jury's satisfaction....").

It is not important that the jury might have reached a similar conclusion had it been given an opportunity to decide the issue under a correct instruction. A plea of not guilty places all issues in dispute, "even the most patent truths." *United States v. Goetz,* 746 F.2d 705, 708 (11th Cir.1984) (quoting *Roe v. United States,* 287 F.2d 435, 440 (5th Cir.), *cert. denied,* 368 U.S. 824, 82 S.Ct. 43, 7 L.Ed.2d 29 (1961)) (and cases cited therein). *See also United States v. Argentine,* 814 F.2d 783, 788 (1st Cir.1987); *Johnson,* 718 F.2d at 1322; *United States v. Natale,* 526 F.2d 1160, 1167 (2d Cir.1975), *cert. denied,* 425 U.S. 950, 96 S.Ct. 1724, 48 L.Ed.2d 193 (1976). The First Circuit has succinctly stated this point: "Whatever probative force the government's proof possessed, the jury had the power to accept or reject it—or to find it insufficiently persuasive. The defendant had a correlative right to free and unhampered exercise by the jury of all its powers." *Argentine,* 814 F.2d at 788.[9]

Accordingly, the district judge committed error when he relieved the government of establishing, and the jury from finding beyond a reasonable doubt, every essential element of a violation of 18 U.S.C. § 2113(a).

**6.** *See Schwachter v. United States,* 237 F.2d 640, 644 (6th Cir.1956) ("the general rule is settled that the trial judge in a criminal case cannot weigh the evidence or judge the credibility of the witnesses and take from the jury a controverted question of material fact, no matter how strong he may be of the opinion that the evidence has established the fact beyond a reasonable doubt.").

**7.** We must assume that the jury acted in accordance with the instructions given them. *City of Los Angeles v. Heller,* 475 U.S. 796, 798, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806 (1986).

**8.** Since the government's evidence on this issue consisted mainly of witness testimony, the trial judge replaced the jury by reaching a conclusion based on assessing the credibility of witnesses and weighing the probative value of the evidence. *See White Horse,* 807 F.2d at 1430.

**9.** Similarly, the trial court's error is not cured because we may believe the jury would have found the accused guilty based on the evidence. *Glenn v. Dallman,* 686 F.2d 418, 421 (6th Cir. 1982); *United States v. Voss,* 787 F.2d 393, 398 (8th Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 286, 93 L.Ed.2d 261 (1986).

## B

Seeking to rehabilitate the district court's jury instruction, the government relies on *United States v. Sliker*, 751 F.2d 477 (2d Cir.1984), *cert. denied sub nom. Buchwald v. United States*, 470 U.S. 1058, 105 S.Ct. 1772, 84 L.Ed.2d 832 (1985). In *Sliker*, the defendants were convicted of bank embezzlement, bank larceny and falsification of bank records, statutory offenses which required proof that the bank involved was FDIC insured on the date of the crimes. *See* 18 U.S.C. §§ 656, 1005, 2113(a), (f) (1982). On appeal, they challenged the jury instruction on the ground that it improperly removed this essential element from the jury's consideration. The Second Circuit summarized the jury instruction as follows:

In his charge the judge made plain that one of the elements the Government was required to prove was "that the deposits were insured by the FDIC." The judge stated this twice, moments apart. Between these two statements, he observed that "certain facts are not disputed," among which was that "Merchants Bank undoubtedly has its deposits insured by the Federal Deposit Insurance Corporation."

*Sliker*, 751 F.2d at 483.

The court of appeals rejected the defendants' contention that the charge removed the FDIC insurance element from the jury's consideration. The court emphasized that the district judge specifically charged the jury that FDIC insurance was an essential element of the statutory offenses, which the government was required to prove beyond a reasonable doubt. *Id.* at 485. In the court's view, the trial judge's statement that it was undisputed that Merchants Bank had its deposits insured by the FDIC was little more than a permissible

comment upon the evidence. The court said:

There was in fact no dispute that Merchants Bank "has" its deposits insured by the FDIC, which was all that the judge said. Under his charge the jury still was obliged to determine whether the bank had them insured *at the date of the crime.*

*Ibid.* (emphasis added). The Second Circuit concluded that it did not believe the jury "was misled into thinking that it could not render a verdict for the defendants on the basis of a reasonable doubt that Merchants Bank was insured by the FDIC at the time of the crime." *Ibid.* (citation omitted).

■ Characterizing the charge in *Sliker* and in this case as "remarkably similar," the government contends that the district judge here was merely commenting upon the evidence. We disagree and find *Sliker* distinguishable from the present case. Unlike the charge in *Sliker*, the district court in Mentz's trial never specifically instructed the jury that the government was required to prove beyond a reasonable doubt that the banks were FDIC insured on the dates the crimes took place.[10] Also, the charge in *Sliker* left open the possibility that the jury would not find that the bank was insured *on the date of the crimes.* Here, by contrast, the trial judge stated in unequivocal language that the banks in question were FDIC insured "at the time of the offenses alleged in the indictment." [11]

■ A trial judge may comment on the evidence. *Quercia v. United States*, 289 U.S. 466, 469, 53 S.Ct. 698, 698, 77 L.Ed. 1321 (1933); *McBee v. Grant*, 763 F.2d 811, 817 (6th Cir.1985); 2 C. Wright, Federal Practice & Procedure § 488, at 730 (1982). But he may do so only if his remarks do not convey the impression that they are

---

**10.** The government makes much of the fact that the district court at several different points in its charge instructed the jury that the government had "the burden of establishing each of [the] elements by proof beyond a reasonable doubt." This general charge is insufficient because it does not place before the jury the essential element that the district court removed from consideration.

**11.** In *Sliker*, 751 F.2d at 485, the court also noted that, as to whether the bank was insured on the date of the crimes, "there was no 'dispute' in the ordinary sense of an issue on which opposing evidence or argument has been presented." In the instant case, by contrast, Mentz consistently maintained before the district court that the banks were not FDIC insured at the time of the robberies.

established truths, such that the jury may not deviate from them. *See Johnson*, 718 F.2d at 1325 (if the trial judge chooses to comment on the evidence, he must instruct the jury that they are not bound by his comments); 8A J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice ¶ 30.05, at 30–46 (1987). Since the district court's comments in this case left no room for the jury to decide the issue of the banks' FDIC insurance coverage, they went well beyond the permissible range of acceptability.

Alternatively, the government contends that the district court properly took judicial notice of the FDIC insurance coverage of the banks. Rule 201, Fed.R.Evid. Relying on Rule 201(b),[12] the government argues: "That the banks robbed in the instant case were insured by the FDIC on the date of the respective robberies is a fact which can be readily determined from the banks' own records; further, the fact that the banks were so insured is one which is generally known."

■■■ A court may take judicial notice of adjudicative facts in a criminal case, whether requested or not. Rule 201(c), (f), Fed.R.Evid. When the court does so, however, there will normally be a record of this. "Care should be taken by the court to identify the fact it is noticing, and its justification for doing so." *Colonial Leasing Company of New England v. Logistics Control Group International*, 762 F.2d 454, 459 (5th Cir.1985). This facilitates intelligent appellate review, and is particularly necessary when the fact noticed is an essential element of the crime charged. After reviewing the record, we are unable to find any evidence that the district court judicially noticed the FDIC insurance coverage of the banks in this case. Nor is there any indication that a request was ever made. Because the government has offered no more than its own assertion of the trial court's action, we conclude that its reliance on judicial notice principles must fail for a lack of factual support in the record.

■■■ In any event, the application of judicial notice principles does not materially advance the government's position. In a criminal case, a trial court that takes judicial notice of an adjudicative fact must "instruct the jury that it may, but is not required to, accept as conclusive any fact judicially noticed." Rule 201(g), Fed.R. Evid. This provision "contemplates that the jury in a criminal case [will] pass upon facts which are judicially noticed." *United States v. Jones*, 580 F.2d 219, 224 (6th Cir.1978). As so construed, Rule 201(g) preserves the jury's "traditional prerogative to ignore even uncontroverted facts in reaching a verdict," and thereby prevents the trial court from transgressing the spirit, if not the letter, of the Sixth Amendment right to a jury trial by directing a partial verdict as to the facts. *Ibid.* (relying on H.R.Rep. No. 650, 93d Cong., 1st Sess. 6–7 (1973), *reprinted in* 1974 U.S. Code Cong. & Admin. News 7075, 7080). *See also United States v. Dior*, 671 F.2d 351, 358 n. 11 (9th Cir.1982).

A trial court commits constitutional error when it takes judicial notice of facts constituting an essential element of the crime charged, but fails to instruct the jury according to Rule 201(g). The court's decision to accept the element as established conflicts with the bedrock principle that the government must prove, beyond the *jury's* reasonable doubt, every essential element of the crime. *See United States v. Thomas*, 610 F.2d 1166, 1171 n. 10 (3d Cir.1979); *Jones*, 580 F.2d at 224.[13]

**12.** Rule 201(b) states:
  *Kinds of facts.* A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

**13.** We confine our remarks to "adjudicative facts" constituting an essential element within the meaning of Rule 201(a), Fed.R.Evid. *See United States v. Gould*, 536 F.2d 216 (8th Cir. 1976) (the reach of Rule 201(g) extends only to adjudicative, not legislative, facts; trial court properly took judicial notice of fact that cocaine hydrochloride is a schedule II controlled substance). *See generally Marshall v. Bramer*, 828 F.2d 355, 357 (6th Cir.1987) (Rule 201 governs only judicial notice of adjudicative facts).

■ Even assuming the district court in this case judicially noticed the insurance coverage by the FDIC, it was obligated to inform the jury that it could disregard the facts noticed. The court's failure to make such a statement permitted the jury to convict Mentz without ever examining the evidence concerning an element of the crime charged, and thus violated his Sixth Amendment right to a jury trial.[14]

### C

The government argues as a fallback position that any error was harmless. We disagree.

In *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the Supreme Court "rejected the argument that errors of constitutional dimension necessarily require reversal of criminal convictions." *Rose v. Clark,* 478 U.S. 570, 106 S.Ct. 3101, 3105, 92 L.Ed.2d 460 (1986). The critical inquiry, according to the Court, is whether an appellate court "may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." *Delaware v. Van Arsdall,* 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986). *Accord, Rose v. Clark,* 478 U.S. at ——, 106 S.Ct. at 3105.

At the same time, the Court has indicated that certain constitutional errors are so fundamental to the criminal process that reversal is required "without regard to the evidence in the particular case." *Rose v. Clark,* 478 U.S. at ——, 106 S.Ct. at 3106. *See also Chapman v. California,* 386 U.S. at 23, 87 S.Ct. at 828 ("there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error"). Without representing an exhaustive list, the Court has included within this category the introduction of a

coerced confession, *Payne v. Arkansas,* 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975 (1958), the complete denial of the right to counsel, *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), and adjudication by a biased judge, *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927). The Court has observed that these "basic protections" ensure that the criminal trial is "fundamentally fair" and serves as a reliable vehicle for determination of guilt or innocence. *Rose v. Clark,* 478 U.S. at ——, 106 S.Ct. at 3106.

The question then is whether the district court's instruction, which had the effect of relieving the government of proving beyond a reasonable doubt every essential element of the crime charged, renders a criminal trial fundamentally unfair and thus cannot be harmless error. We believe the Supreme Court's recent decision in *Rose v. Clark* is dispositive of this issue.

In *Rose v. Clark,* the trial judge incorrectly instructed the jury on the element of malice, which had the effect of shifting the burden of proof on an element of the crime in violation of *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), and *Francis v. Franklin,* 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985).[15] The Court ruled that this type of constitutional error was subject to harmless error analysis because it was not "so basic to a fair trial." *Rose v. Clark,* 478 U.S. at ——, 106 S.Ct. at 3107. *See also Burton v. Foltz,* 810 F.2d 118 (6th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 327, 98 L.Ed.2d 354 (1987).

In reaching this conclusion, the Court made several telling observations which have particular significance to the instant case. The Court first reiterated the long-standing prohibition against directed verdicts for the prosecution.

---

14. For an example of a trial court that "meticulously" followed the command of Rule 201(g), see *United States v. Deckard,* 816 F.2d 426 (8th Cir.1987).

15. The jury in *Rose v. Clark* was instructed:
All homicides are presumed to be malicious in the absence of evidence which would rebut the implied presumption. Thus, if the State has proven beyond a reasonable ... doubt

that a killing has occurred, then it is presumed that the killing was done maliciously. But this presumption may be rebutted by either direct or circumstantial evidence, or by both, regardless of whether the same be offered by the Defendant, or exists in the evidence of the State.

*Id.* at ——, 106 S.Ct. at 3104.

[H]armless-error analysis presumably would not apply if a court directed a verdict for the prosecution in a criminal trial by jury. We have stated that "a trial judge is prohibited from entering a judgment of conviction or directing the jury to come forward with such a verdict ... regardless of how overwhelming the evidence may point in that direction." This rule stems from the Sixth Amendment's clear command to afford jury trials in serious criminal cases. Where that right is altogether denied, the State cannot contend that the deprivation was harmless because the evidence established the defendant's guilt; the error in such a case is that the wrong entity judged the defendant guilty.

*Rose v. Clark*, 478 U.S. at ——, 106 S.Ct. at 3106 (citations omitted).

The Court then indicated that the *Sandstrom* error in *Rose v. Clark* was not equivalent to a directed verdict for the State because, "[w]hen a jury is instructed to presume malice from predicate facts, it still must find the existence of those facts beyond a reasonable doubt." *Id.* at ——, 106 S.Ct. at 3107–08. In other words, "the error in *Rose* did not entirely preclude the jury from considering the element of malice...." *Pope v. Illinois*, —— U.S. ——, 107 S.Ct. 1918, 1922, 95 L.Ed.2d 439 (1987). *See also Rose v. Clark*, 478 U.S. at ——, 106 S.Ct. at 3107 n. 8 ("Because a presumption does not remove the issue of intent from the jury's consideration, it is distinguishable from other instructional errors that prevent a jury from considering an issue.") (quoting *Connecticut v. Johnson*, 460 U.S. 73, 95 n. 3, 103 S.Ct. 969, 982 n. 3,

74 L.Ed.2d 823 (1983) (Powell, J., dissenting)).[16]

■ *Rose v. Clark* stands for the proposition that "when an instruction prevents the jury from considering a material issue, it is equivalent to a directed verdict on that issue and therefore cannot be considered harmless." *Hoover v. Garfield Heights Municipal Court*, 802 F.2d 168, 177 (6th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 1610, 94 L.Ed.2d 796 (1987).[17] In that event, the jury is prevented from carrying out its historic duty of finding beyond a reasonable doubt the facts supporting every essential element of the offense. "The harmless-error doctrine may enable a court to remove a taint from proceedings in order to *preserve* a jury's findings, but it cannot constitutionally *supplement* those findings." *Pope v. Illinois*, —— U.S. at ——, 107 S.Ct. at 1925 (Brennan, J., dissenting).

■ In the instant case, the error cannot be deemed harmless. By placing a judicial imprimatur on the government's proof with respect to an element of the offense, the faulty instruction directed a partial verdict for the prosecution, ensuring that the jury would not find *all* elements beyond a reasonable doubt. This is a far cry from the rebuttable presumption at issue in *Rose v. Clark*, which did not remove the element of malice from the jury's consideration. Instead, this is a case where the "wrong entity judged the defendant guilty," *Rose v. Clark*, 478 U.S. at ——, 106 S.Ct. at 3106, thereby rendering the trial fundamentally unfair. Accordingly, Mentz's conviction must be reversed.[18]

---

**16.** In his dissent in *Connecticut v. Johnson,* Justice Powell said:

A directed verdict removes an issue completely from the jury's consideration. Such a [*Sandstrom* ] presumption, by contrast, leaves the issue ultimately to the jury. A trial court's instructions are not limited to the presumption. A court also, as was done in this case, will charge that the defendant is presumed innocent and that the State must prove beyond a reasonable doubt each element of the crime—including the element of intent.

*Id.* at 95, 103 S.Ct. at 982.

**17.** In *Hoover v. Garfield Heights Municipal Court,* this court concluded that a trial court's

failure to instruct the jury on an essential element of the offense charged precluded application of harmless error principles. *Accord, Cole v. Young,* 817 F.2d 412 (7th Cir.1987). *But see Rosenfeld v. Dunham,* 820 F.2d 52 (2d Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 463, 98 L.Ed.2d 402 (1987). We see little distinction between this case and the situation in *Hoover.* In both cases, the net effect of the charge was to take the issue out of the jury's hands entirely.

**18.** We are not alone in concluding that under *Rose v. Clark* harmless error principles will not be applied to a jury instruction which conclusively establishes an essential element of the crime charged. *See United States v. Argentine,*

## II. SPEEDY TRIAL ACT.

### A

The Speedy Trial Act, 18 U.S.C. §§ 3161–74 (1982), requires that the accused be brought to trial within 70 days from the filing of the information or indictment, or from the date he first appears before a judicial officer [19] of the court in which the charge against him is pending, whichever date last occurs. 18 U.S.C. § 3161(c)(1) (1982). The harshness of this strict deadline is mitigated by section 3161(h), which excludes certain periods from the 70–day calculation. S.Rep. No. 212, 96th Cong., 1st Sess. 9 (1979) (Congress saw the need to "build into [the Act's] fixed limits sufficient flexibility to make compliance with them a realistic goal"). *See also United States v. Richmond,* 735 F.2d 208, 211 (6th Cir.1984).

Mentz contends that the Speedy Trial Act was violated because more than 70 days passed before he was brought to trial, ignoring legitimate periods of excludable delay under section 3161(h). The district court denied his pretrial motion to dismiss the charges, concluding that the government had complied with the time limits set by the Act.

Initially, we must determine when the speedy trial clock began to run. On August 11, 1986, shortly after his arrest, Mentz made an initial appearance before a magistrate. Counsel was appointed and bail was set. On August 18,[20] a preliminary hearing was held before the same magistrate. Probable cause was established and Mentz was held to answer to the charge of bank robbery, in violation of 18 U.S.C. § 2113(a) (1982). He was indicted on that charge on September 9, and entered a not guilty plea at his arraignment on September 18.

In their initial submissions to this court, the parties could not agree which date triggered the running of the speedy trial clock. Without supportive argument, the government assumed that the clock should be calculated from the day of arraignment on September 18, apparently because it followed the filing of the indictment. Mentz argued that the filing of the indictment on September 9 was the applicable starting date, because it was preceded by an appearance before a judicial officer within the meaning of section 3161(c)(1). Because the record was unclear on this point, we asked for additional submissions from the parties following oral argument.

■ The parties are now in agreement. "When the defendant is arrested prior to indictment, and makes an initial appearance before a magistrate who orders him held to answer to the charges in district court, the seventy-day pretrial period runs from the date of his indictment." *United States v. Haiges,* 688 F.2d 1273, 1274 (9th Cir.1982). *See also United States v. Yunis,* 723 F.2d 795, 796 (11th Cir.1984); *United States v. Carrasquillo,* 667 F.2d 382, 384 (3d Cir. 1981); Committee on the Administration of the Criminal Law of the Judicial Conference of the United States, *Guidelines to the Administration of the Speedy Trial Act of 1974,* as amended, at 8 (1984) [hereinafter *Judicial Conference Guidelines* ]. Mentz's appearance before a magistrate on either August 11 or August 18 constituted the date he "appeared before a judicial officer of the court in which [the] charge is pending." 18 U.S.C. § 3161(c)(1)(1982). Since his indictment on September 9 occurred later, this subsequent date triggered the speedy trial clock for purposes of section 3161(c)(1). Consequently, the government was required to bring Mentz to trial within 70 days of September 9, barring periods of excludable delay.

■ Having commenced on December 17, however, Mentz's trial did not begin

---

814 F.2d 783 (1st Cir.1987); *United States v. White Horse,* 807 F.2d 1426 (8th Cir.1986). For pre-*Rose v. Clark* cases reaching a similar result, see, *e.g., United States v. Voss,* 787 F.2d 393 (8th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 286, 93 L.Ed.2d 261 (1986); *United States v. Bass,* 784 F.2d 1282 (5th Cir.1986).

**19.** The term "judicial officer" means any United States magistrate or federal district judge. 18 U.S.C. § 3172 (1982).

**20.** Unless otherwise indicated, all dates are in 1986.

until 100 days from September 9.[21] Mentz has presented a prima facie case of a Speedy Trial Act violation. *See United States v. Pelfrey*, 822 F.2d 628, 634 (6th Cir.1987). We thus consider the government's contention that there were sufficient excludable days under section 3161(h) to reduce the time between indictment and trial to within the 70–day limit imposed by the Act. Specifically, the government must show that 30 days were properly excluded.

### B

■ Although the speedy trial clock began to run on September 9, the day of indictment is excluded. *United States v. Severdija*, 723 F.2d 791, 793 (11th Cir. 1984); *Yunis*, 723 F.2d at 797. This is also true for the day of arraignment on September 18. *United States v. Monroe*, 833 F.2d 95, 99 (6th Cir.1987); *Severdija*, 723 F.2d at 793; *Haiges*, 688 F.2d at 1274–75; *Judicial Conference Guidelines, supra*, at 47. Both of these dates are excluded as "[a]ny period of delay resulting from other proceedings concerning the defendant...." 18 U.S.C. § 3161(h)(1) (1982). This reduces the number of countable days to 98.

### C

The government relies primarily upon the two exclusions for delays occasioned by the filing of pretrial motions:

> The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence:
>
> (1) Any period of delay resulting from other proceedings concerning the

defendant, including but not limited to —....

> (F) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion; .... and
>
> (J) delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court.

18 U.S.C. §§ 3161(h)(1)(F) & (J) (1982).

■ The language of these exclusions, as interpreted by the Supreme Court in *Henderson v. United States*, 476 U.S. 321, 106 S.Ct. 1871, 90 L.Ed.2d 299 (1986), distinguishes between motions that require a hearing and those that do not. If a motion requires a hearing, we look first to section 3161(h)(1)(F), which excludes all the time between the filing of the motion and the conclusion of the hearing on that motion. *Henderson*, 476 U.S. at 329, 106 S.Ct. at 1876; *Pelfrey*, 822 F.2d at 633; *United States v. Keefer*, 799 F.2d 1115, 1121–22 (6th Cir.1986). This exclusion of the time prior to the conclusion of the hearing is automatic. *Ibid.* After the hearing, the district court may need additional time to receive supplemental filings from the parties for proper resolution of the motion. This time is also excluded. *Henderson*, 476 U.S. at 331, 106 S.Ct. at 1877. Once the hearing is concluded, and the district court has received all the submissions, there must be "prompt disposition" of the motion. This is where section 3161(h)(1)(J) comes into play. That provision excludes a maximum of 30 days from the day the motion is "actually under advisement" by the court.[22]

---

**21.** For purposes of the Speedy Trial Act, a jury trial commences with the beginning of *voir dire*. *United States v. Richmond*, 735 F.2d 208, 211 (6th Cir.1984); *Judicial Conference Guidelines, supra*, at 10–11.

**22.** In *Pelfrey*, 822 F.2d at 633–34, we held that section 3161(h)(1)(J) creates a presumption of 30 excludable days for considering a motion, which may be "rebutted if, within the 30–day period, the motion is granted or denied...."

For example, some motions can be decided from the bench after a hearing and, thus, require no "under advisement" period.

For difficult motions which require more than 30 days for disposition, an "ends of justice" continuance under section 3161(h)(8) may be available after appropriate findings. H.R.Rep. No. 1508, 93d Cong., 2d Sess. 33, *reprinted in* 1974 U.S.Code Cong. & Admin.News 7401, 7426; *Judicial Conference Guidelines, supra*, at 45.

■ For motions that do not require a hearing, *Henderson* teaches that the time after the motion is filed, while the district court may be waiting for additional submissions from the parties, is automatically excluded. *Henderson*, 476 U.S. at 331, 106 S.Ct. at 1877; *United States v. Felton*, 811 F.2d 190, 195 (3d Cir.) (en banc), *cert. denied*, —— U.S. ——, 107 S.Ct. 3235, 97 L.Ed.2d 740 (1987). If no additional submissions are required, or they have been furnished to the court, section 3161(h)(1)(F) requires "prompt disposition." Again, section 3161(h)(1)(J) becomes applicable and excludes a maximum of 30 days once the motion is "actually under advisement." *Henderson*, 476 U.S. at 329, 106 S.Ct. at 1876; S.Rep. No. 212, 96th Cong., 1st Sess. 34 (1979).

■ A motion is "actually under advisement" when "the court receives all the papers it reasonably expects...." *Henderson*, 476 U.S. at 329, 106 S.Ct. at 1876. *See also United States v. Robertson*, 810 F.2d 254, 260 n. 12 (D.C.Cir.1987); *Judicial Conference Guidelines, supra*, at 45–46;[23] Thus, the "under advisement" period will normally begin to run the day after the court has received additional submissions from the parties. *See Henderson*, 476 U.S. at 331, 106 S.Ct. at 1877. If the court has not requested any additional filings, however, this period will normally began on the day following the conclusion of the hearing on the motion. *United States v. Stafford*, 697 F.2d 1368, 1373 & n. 5 (11th Cir.1983). If a hearing is not required, the advisement period will normally begin on the day the motion is filed. *See*

*United States v. Mers*, 701 F.2d 1321, 1336, 1338–39 (11th Cir.), *cert. denied*, 464 U.S. 991, 104 S.Ct. 482, 78 L.Ed.2d 679 (1983).[24]

■ With these principles in mind, we turn to the record in this case. On October 24, Mentz moved the court to permit his parents to visit him in the county jail. The motion was granted that same day. A similar motion was filed on October 27 and granted the next day, October 28. These motions did not require a hearing, and thus 3 days were excludable under section 3161(h)(1)(J).[25] This further reduces the total number of days to 95.

We must also consider Mentz's motion for discovery and inspection pursuant to Rule 16, Fed.R.Crim.P., filed on September 16. In its initial brief to this court, the government did not rely on time excludable because of this motion. After oral argument, we asked for additional information on this motion.

The government now contends that the district court ruled on Mentz's Rule 16 motion on the first day of trial, December 17, some 93 days after it was filed with the court. Since this pretrial motion did not require a hearing, the government argues that section 3161(h)(1)(J) permitted an exclusion of 30 days from the day the motion was actually under advisement. This would exclude the entire period from September 16 until October 15.

Mentz responds that his Rule 16 motion was essentially a dead letter, without significance under the Speedy Trial Act, because the district court never ruled on the motion. He suggests that the court took

---

**23.** The Judicial Conference Guidelines state that a motion is taken under advisement on "the day following the date on which the court has received everything it expects from the parties, examining physician, etc., before reaching a decision. It is normally the date following the expiration of an exclusion under subparagraph ... (F)...." *Judicial Conference Guidelines, supra*, at 45–46. *See also id.* at 35–36.

**24.** Our discussion assumes that the record does not affirmatively show that the motion is not under advisement. *See Pelfrey*, 822 F.2d at 634.

**25.** During oral argument, Mentz maintained that these pretrial motions for visitation were

not contemplated by the statutory exclusions for pretrial motions. 18 U.S.C. §§ 3161(h)(1)(F) & (J) (1982). However, section 3161(h)(1)(F) speaks in terms of "*any* pretrial motion" and thus admits of no exclusion.

> Congress could have attacked the many problems raised by the different varieties of pretrial motions and given separate consideration to them. Wisely, it avoided such a morass and extended the exclusion to "any pretrial motion", without distinguishing among them.

*United States v. Cobb*, 697 F.2d 38, 42 (2d Cir. 1982) (*Cobb* has lost some of its vitality after *Henderson v. United States*, 476 U.S. 321, 106 S.Ct. 1871, 90 L.Ed.2d 299 (1986)).

no action because it expected the parties to conduct discovery without judicial intervention, unless a dispute arose. He adds that no dispute ever arose.

Pretrial discovery in a criminal case is governed by Rule 16, Fed.R.Crim.P. The language of the Rule, as amended in 1975, envisions that discovery will proceed without the district court's intervention. According to the Advisory Committee on Rules:

> The language of the rule is recast from "the court may order" or "the court shall order" to "the government shall permit" or "the defendant shall permit." This is to make clear that discovery should be accomplished by the parties themselves, without the necessity of a court order unless there is dispute as to whether the matter is discoverable or a request for a protective order under subdivision (d)(1).

*See also United States v. Pineros*, 532 F.2d 868, 870 n. 3 (2d Cir.1976) ("Informal mutual discovery has always been in the spirit, and is now explicitly encouraged by the language of, the Rule.").

The Judiciary Committee of the House of Representatives noted that the amended rule, as proposed, did not require the parties to file a formal motion to request discovery:

> As proposed to be amended, the rule provides that the parties themselves will accomplish discovery—no motion need be filed and no court order is necessary. The court will intervene only to resolve a dispute as to whether something is discoverable or to issue a protective order.

Agreeing with this approach, the Committee said:

> The Committee agrees that the parties should, to the maximum possible extent, accomplish discovery themselves. The court should become involved only when it is necessary to resolve a dispute or to issue an order pursuant to subdivision (d).

*See also United States v. Thuna*, 103 F.R.D. 182, 183 (D.P.R.1984) ("None of the discovery requests that can be made by the defendant under the subdivisions of Rule 16(a)(1) have to be formal documents filed in court requiring judicial intervention.").

■■■ Thus, when defense counsel makes a timely[26] request for discovery, the government must furnish the information, unless it believes there are grounds for a protective order or the material is not within the scope of the applicable rule. 2 C. Wright, Federal Practice & Procedure § 257, at 111 (1982). *See also United States v. Bocra*, 623 F.2d 281 (3d Cir.), *cert. denied*, 449 U.S. 875, 101 S.Ct. 217, 66 L.Ed.2d 96 (1980). There is no need for a formal motion and, unless a snag develops, no need for court intervention. *United States v. Clevenger*, 458 F.Supp. 354, 356–57 (E.D.Tenn.1978) (district court will not rule on motion to compel discovery because movant had not requested, and been denied, discovery from the government under Rule 16).

■■■ It is clear that Mentz did not need to file a formal motion seeking discovery from the government. Since he did so, however, we must decide whether the motion has significance under the Speedy Trial Act.

The government takes the position that, because the district court ruled on the motion, it falls within the exclusions for pretrial motions. We reject this contention because we find no affirmative evidence in the record that the district court ever considered or ruled on the motion.

The government draws our attention to the December 17 hearing for Mentz's motion to dismiss under the Speedy Trial Act, during which it is alleged the court ordered the government to comply with the discovery request. We have reviewed this record and find no evidence of a ruling on Mentz's Rule 16 motion. Indeed, the district judge indicated at the outset of this hearing that he had before him only two motions: Mentz's motion to withdraw his request for submission of special *voir dire*

---

**26.** Rule 12(b)(4), Fed.R.Crim.P., states that requests for discovery pursuant to Rule 16 must be raised before trial.

questions and his motion to dismiss under the Speedy Trial Act.

The government also points to the docket sheet entry for the Rule 16 motion. In the margin next to this entry, under the heading "Excludable Delay," is the clerical notation "93." We are not persuaded by this entry, however, because it does not show judicial action. The docket sheet does not contain a corresponding entry indicating that the court ruled upon the motion. This contrasts strongly with Mentz's two later motions for parental visitation. The docket sheet contains specific notations indicating that these motions were granted by the court.

We believe the district court, consistent with the thrust of Rule 16, viewed Mentz's motion as merely a pro forma request for discovery directed at the government, rather than an invitation for district court intervention. Hence, it is not surprising there is no entry in the docket sheet that the motion was ruled upon.

We also think it is reasonable to assume that the government did not rely on this motion when it made its Speedy Trial Act calculations in the district court. Since the government complied with Mentz's Rule 16 motion without objection,[27] it reasonably should have concluded that under Rule 16 there would be no need for the district court to rule on the motion. This conclusion is reinforced by the government's initial brief on appeal, which failed to raise or discuss Mentz's discovery motion.[28]

Under these circumstances, we conclude that Mentz's discovery motion pursuant to Rule 16 did not toll the speedy trial clock. Because the district court never held a hearing or ruled on the motion, and there is no other indication that the motion was "actually under advisement," the motion did not trigger the statutory exclusions for delay occasioned by the filing of a pretrial motion. 18 U.S.C. §§ 3161(h)(1)(F) & (J) (1982).[29]

## D

We next consider the government's contention that the period from November 26 until December 1 is excludable. On September 23, the district court held a pretrial hearing and set the trial for October 28. At this hearing, defense counsel indicated that Mentz would be relying on an alibi witness who would account for the defendant's increased wealth immediately following the robberies. No trial was held on October 28. On November 19, the district judge rescheduled the trial date for December 2, when it became apparent that he would be involved in a lengthy, unrelated criminal trial.

About this same time, the government informed defense counsel that Mentz's alibi witness had recanted her story, admitting that it was fabricated in order to provide the defendant with an alibi. After consulting with his attorney, Mentz notified the government on November 26 that he would be changing his plea to guilty on the day of trial scheduled for December 2. The court was notified of this change.

When December 2 arrived, the district court questioned Mentz about his change of plea. The defendant maintained he was innocent of the charges.

---

**27.** Although the record does not reflect this fact, this is a safe assumption: the government never objected to the Rule 16 motion or sought a protective order, and Mentz did not file a second motion seeking compliance with his discovery motion. Mentz has indicated in his supplemental brief on appeal that no discovery disputes arose during the course of the proceedings below. There is no evidence to the contrary.

**28.** There is also no indication at the hearing for Mentz's motion to dismiss under the Speedy Trial Act that the government considered the Rule 16 motion to be of any significance.

**29.** We have not found, and the parties have not cited to us, any cases in which a Rule 16 motion, which was not been ruled upon or subject to hearing, has tolled the speedy trial clock under the exclusions for pretrial motions. 18 U.S.C. §§ 3161(h)(1)(F) & (J) (1982). *See United States v. Hastings,* 667 F.Supp. 888, 900 n. 4 (D.Mass.1987) ("There do not appear to be any reported cases specifically discussing the relationship between automatic discovery and the Speedy Trial Act.").

THE COURT: Mr. Mentz, why don't you just come up here please. For the purpose of the record, I should indicate that this matter was assigned for trial today. I was informed that there would be a plea of guilty forthcoming, and for this reason did not bring in a full jury, although there is one ready, and we have held it in the event that there was a change of plans. It's my understanding, Mr. Mentz, that you have now desired not to enter a plea of guilty; is that correct?

MENTZ: Sir, I said I would plead guilty but they wanted a factual basis and I'm not going to get up here and tell you a lie and tell you something I didn't do, not like that.

THE COURT: What will you tell me, that you are not guilty?

MENTZ: No, sir, I'm not guilty of bank robbery.

THE COURT: Fine. Then don't plead guilty.

With Mentz maintaining his innocence, the district court rescheduled the trial for December 16. It was later changed to December 17.

Mentz concedes that the period from December 2 until the December 17 trial date is chargeable to him. This uncontested period totals 16 days, reducing the total from 95 days to 79 days.

The government also wishes to exclude an additional 6 days, from November 26 until December 1, due to Mentz's vacillations about whether he wanted to change his plea to guilty. Relying on the general introductory language of section 3161(h)(1), the government reasons:

> The operative language states that exclusive delay is "[a]ny period of delay resulting from other proceedings concerning the defendant, *including but not*

*limited to ...*" subsections (A)–(J). 18 U.S.C. § 3161(h)(1) (Emphasis Added). Certainly a defendant's informing government counsel of his desire to change his plea to a criminal indictment to "guilty", thereby obviating the necessity of defendant's criminal trial, then six days later deciding not to change the plea, thus necessitating trial, removes the days thereby consumed from inclusion in the 70 day period. This excludable delay is attributable solely to the defendant, as defendant's vacillation concerning the guilty plea led the court and government counsel to consider December 2, 1986, originally set as the trial date, as simply a brief appearance at which the defendant would plea guilty.

We find ourselves in general agreement with the government's position. If a defendant notifies the court or the government that he wishes to change his plea to guilty, and subsequently withdraws that offer close to or beyond the 70–day time limit, the delay resulting from the defendant's vacillation will be charged to the defendant.[30] These days will be excluded as a "period of delay resulting from other proceedings concerning the defendant" pursuant to section 3161(h)(1).[31]

This situation is analogous to a defendant's withdrawal of a guilty plea. Section 3161(i) provides that where the time for a defendant's trial has elapsed because he pleads guilty and then subsequently withdraws his plea, the 70–day time limit recommences from the date of the court order permitting the plea withdrawal.[32] This provision was enacted in response to the concern of the Department of Justice that defendants were too often changing their pleas late in the game in order to gain the benefit of the Speedy Trial Act time limits. *United States v. Carter*, 804 F.2d 508, 512

---

**30.** The delay will normally include the time during which the defendant has vacillated, and the time lost by rescheduling a new trial date.

**31.** We also agree with the government that the specific proceedings mentioned in the various subparagraphs of section 3161(h)(1) do not exhaust the events that qualify as "other proceedings concerning the defendant" within the meaning of that section. *United States v. Montoya*, 827 F.2d 143, 150 (7th Cir.1987); *Judicial Conference Guidelines, supra,* at 47. See *Henderson v. United States,* 476 U.S. at 330–31, 106 S.Ct. at 1877.

**32.** Of course, the analogy is not complete, inasmuch as in our situation the government is not given an additional 70 days.

(9th Cir.1986) ("The purpose of § 361(i) is to prevent defendants from pleading guilty and then withdrawing the plea to thwart the time limit."). In a letter to Senator Ervin discussing a precursor of section 3161(i), then Assistant Attorney General William H. Rehnquist stated:

> Section 3163(f) makes provision for cases involving the withdrawal of a plea of guilty or nolo contendere. Without a provision of this nature, a defendant could withdraw his plea after the expiration of the time limits and move for dismissal. Similarly, he could withdraw the plea late in the time limits and leave the Government with little time to prepare its case in order to meet the time limit. For these reasons, we think this provision is essential.

A. Partridge, *Legislative History of Title I of the Speedy Trial Act of 1974* (Fed. Judicial Center 1980) at 188.

The 1974 Senate Judiciary Committee Report accompanying amended section 3161(i) indicates that Congress concurred with the Department's concern:

> This provision [section 3161(i) ] added at the suggestion of the Justice Department, takes into account the relative ease with which pleas of guilty may be withdrawn prior to sentence. Under S. 895, without such a provision, it was possible for a defendant to enter a plea of guilty on the 59th day to one of several charges and wait several weeks, and then withdraw his plea before sentencing, thereby frustrating any prosection on the other counts which might not yet have been dismissed. It was even possible under the original language that the Government would have been unable to prosecute the defendant with respect to the charge to which he pleaded guilty but subsequently withdrew the plea.

S.Rep. No. 1021, 93d Cong., 2d Sess. 41 (1974). *See generally United States v. Mack,* 669 F.2d 28 (1st Cir.1982).

The same concerns reflected in the legislative history of section 3161(i) are present in the situation we have described above. We will not permit the defendant to act like a chameleon, changing colors to suit his purposes, in an effort to deceive the court and the government. When a defendant notifies the government of his proposed change of plea, the government in many instances will suspend its trial preparations. When the proposed change is eventually retracted, the district court will often be unready to proceed to trial, necessitating further delay. If we were to conclude that the delay caused by the defendant's plea vacillation did not stop the speedy trial clock, we would be rewarding the defendant by enhancing his chances of dismissal of the indictment. "In essence, [the defendant] would have successfully worked both sides of the street, lulling the court and prosecution into a false sense of security only to turn around later and use the ... leisurely pace of the case as grounds for dismissal." *United States v. Pringle,* 751 F.2d 419, 434 (1st Cir.1984). The Speedy Trial Act will not reward a defendant for such tactics. *See United States v. Davis,* 679 F.2d 845, 849–50 (11th Cir.1982), *cert. denied sub nom. Armstrong v. United States,* 459 U.S. 1207, 103 S.Ct. 1198, 75 L.Ed.2d 441 (1983).

On the other hand, these principles do not apply in this case. By rescheduling the trial for December 2, the district court, as early as November 19, moved the trial date beyond the 70–day time limit. As of the rescheduling, the 70–day time limit would have expired on November 22. Since this calendar change preceded Mentz's plea vacillation, which did not occur until November 26, the Act's 70–day time limit would have been violated before the scheduled December 2 trial date, whether or not Mentz ever notified the government that he wished to change his plea. Because Mentz's conduct did not cause the trial to be scheduled outside the Act's 70–day time limit, there is no indication he tried to "sandbag" the government or profit from his indecisiveness. This is apparent from his concession that the delay from rescheduling the trial from December 2 to December 17 was chargeable to him.

Even if we were to exclude, under the principles discussed above, the 6 days requested by the government, it still must

come up with 3 additional excludable days to fulfill the Speedy Trial Act's 70–day time requirement. The government has failed to do so. Consequently, we conclude that the district court erred in denying Mentz's motion to dismiss.[33]

## III. CONCLUSION.

We have already indicated that the judgment below must be reversed because of constitutional error. Because the Speedy Trial Act was violated, the indictment against Mentz must also be dismissed. 18 U.S.C. § 3162(a)(2) (1982). We remand this case to the district court to determine whether to dismiss the indictment with or without prejudice. The trial court is in the best position to make this determination, which will require an evaluation of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of the Speedy Trial Act and on the administration of justice. *Ibid.* *See also United States v. Richmond,* 735 F.2d 208, 216–17 (6th Cir.1984).

REVERSED and REMANDED.

GUY, Circuit Judge concurring in part and dissenting in part.

I concur in Judge Boggs's thorough and well-written analysis of the Speedy Trial Act issue, but I dissent on the jury instruction issue. Although I concur with the court that the instruction as given was erroneous, I would find any error to be harmless.

There is no doubt that during the course of the trial the government produced testimonial and documentary evidence demonstrating the federally-insured status of the banks that were robbed. Also, there is no doubt that in order to establish federal jurisdiction and prove a violation of section 2113, the government must show the bank was insured by the FDIC at the time of the robbery. *United States v. Maner,* 611

F.2d 107 (5th Cir.1980). It is true that on cross examination defense counsel attacked the testimonial evidence of coverage and demonstrated that the witnesses were not completely familiar with all the details of the FDIC coverage. Nonetheless, I find more than ample evidence in the record to allow the case to go to the jury, and I do not read the court's opinion to the contrary.

The problem arises from the fact that the court did not allow the issue of FDIC coverage to be determined by the jury, since the trial judge gave a jury instruction which indicated that coverage existed. The government argues that the court appropriately took judicial notice of the coverage pursuant to Fed.R.Evid. 201(g). I agree with the court's rejection of this argument.

Nonetheless, I would conclude that although the instruction given was erroneous under the circumstances here, only harmless error resulted. In reaching this conclusion, I rely on the reasoning of the court in *Hewitt v. United States,* 110 F.2d 1 (8th Cir.), *cert. denied,* 310 U.S. 641, 60 S.Ct. 1089, 84 L.Ed.1409 (1940). Although hardly recent authority, *Hewitt* has not been overruled and its logic is sound. *Hewitt* is similar to the case at bar in that it involved a bank robbery trial where there was adequate evidence presented by the government for the question of FDIC coverage to be submitted to the jury. However, the court took this issue away from the jury and found coverage as a matter of law. Although the Eighth Circuit found this to be error, they concluded that no reversal was required. The *Hewitt* court stated:

If the instruction complained of had related to a fact which was in actual controversy, there would be much force in the defendant's contention that this Court should take notice of it regardless of the fact that it was not expected to. It is obvious, however, that, while in a technical sense the allegation that the bank was an insured bank was controverted, in a practical sense there was no

---

**33.** Mentz also argues that he was denied his right to a speedy trial as guaranteed by the Sixth Amendment to the Constitution. After weighing the factors specified in *Barker v. Wingo,* 407

U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), we conclude that no violation occurred in this case.

controversy about the matter whatsoever. That the bank was insured and that it had been robbed was not, and is not now, in dispute. The government contended that Hewitt was an aider and abettor. He contended that he was not. That presented the real issue. To send this case back for a retrial because the court (probably inadvertently) stated to the jury that as a matter of law the bank was a member of the Federal Deposit Insurance Corporation, could not, from a practical standpoint, be justified.

110 F.2d at 9 (footnote omitted).

In our case, as in *Hewitt*, there was no question that a bank robbery occurred. Further, the defense did not revolve around FDIC coverage of the bank but was predicated on alibi. The challenge to FDIC coverage was technical rather than substantial, and the coverage issue did not in any way implicate or impede defendant's primary defense. Under such circumstances I would conclude, as did the *Hewitt* court, that reversible error did not occur.