**UNITED STATES of America, Appellee,**

v.

**Alfonso PINEROS, Appellant.**

**No. 574, Docket 75–1354.**

United States Court of Appeals, Second Circuit.

Argued Jan. 27, 1976.

Decided March 29, 1976.

---

Ira Leitel, Brooklyn, N. Y., for appellant.

Paul B. Bergman, Asst. U. S. Atty., Brooklyn (David G. Trager, U. S. Atty., E. D. N. Y., Ethan A. Levin-Epstein, Asst. U. S. Atty., New York City, of counsel), for appellee.

Before MOORE, OAKES and MESKILL, Circuit Judges.

OAKES, Circuit Judge:

The sole ground for this criminal appeal in a case where insanity was the only defense is that the court should have precluded the Government from questioning the defense psychiatrist as to whether he had seen certain hospital records which had not been provided to defense counsel despite an agreement for informal discovery between counsel pursuant to Rule 16 of the Federal Rules of Criminal Procedure.[1] Conviction in the United States District Court for the Eastern District of New York, Mark A. Costantino, *Judge,* followed a three-day jury trial. Appellant was found guilty of conspiracy to distribute and possess with the intent to distribute cocaine between November 21, 1973, and January 10, 1974, in violation of 21 U.S.C. § 846, and of five additional substantive counts of possessing

1. At the time of trial, Fed.R.Crim.P. 16 provided in pertinent part:

(a) *Defendant's Statements; Reports of Examinations and Tests; Defendant's Grand Jury Testimony.* Upon motion of a defendant the court may order the attorney for the government to permit the defendant to inspect and copy or photograph any relevant . . . (2) results or reports of physical or mental examinations, and of scientific tests or experiments made in connection with the particular case, or copies thereof, within the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government . . . . .

(g) *Continuing Duty to Disclose; Failure to Comply.* If, subsequent to compliance with an order issued pursuant to this rule, and prior to or during trial, a party discovers additional material previously requested or ordered which is subject to discovery or inspection under the rule, he shall promptly notify the other party or his attorney or the court of the existence of the additional material. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection of materials not previously disclosed, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may enter such other order as it deems just under the circumstances.

As amended effective December 1, 1975, greater latitude for discovery was given to both the Government and the defendant. The continuing duty of disclosure was retained, Rule 16(c), as was the power of the court in the event of failure of a party to comply with the rule, Rule 16(d)(2). In essence, former Rule 16(a) above now appears in Rule 16(a)(1)(D). Unless otherwise indicated, all references throughout this opinion are to the rules applicable at the time of trial.

the narcotic with intent to distribute and three counts charging actual distribution in violation of 21 U.S.C. § 841.[2] We affirm the judgment.

Following appellant's arrest on January 10, 1974, a competency examination was ordered under 18 U.S.C. § 4244. Subsequently, five separate psychiatric reports were made: in February and April, 1974, appellant was deemed incompetent to stand trial; in November, 1974, and February and March, 1975, doctors concluded that he was competent. On March 14, 1975, after a hearing, the court found appellant competent to stand trial.

When it became evident in January, 1975, that appellant was regaining mental competency, his then appointed counsel, Barry Krinsky, Esq., wrote a letter to the Assistant United States Attorney in charge of the case, requesting informal discovery as to a number of matters but not mentioning psychiatric reports. The Assistant United States Attorney's letter in response replied to many of the questions and also enclosed "photostatic copies of all medical reports prepared by various psychiatrists following court-ordered examinations of the defendant" and requested informal reciprocal discovery under Rule 16(c).[3] In May of 1975 new counsel, Ira Leitel, Esq., was appointed to represent appellant, and on July 16, 1975, he complied with the request for informal reciprocal discovery[4] by enclosing a copy of a report which he had received from the director of the Institute of Forensic Medicine of the Ministry of Justice of the Republic of Columbia.

Appellant's defense turned out to be insanity, claiming that he did not remember anything from November, 1973, to January 10, 1974, when he was arrested. On the eve of the trial in July, 1975, his lawyer procured a psychiatrist, Dr. Rendon, who reviewed the five reports mentioned above, interviewed appellant and subsequently testified at appellant's trial. During cross-examination, Dr. Rendon was asked whether he had also reviewed medical reports from the West Street Federal Detention Center, marked for identification as Exhibit 27, and assorted specific reports of psychological tests, marked for identification as Exhibit 28, which were the foundation of the November, 1974, report. Neither exhibit was ever entered into evidence, and the contents were not disclosed to the jury. Dr. Rendon had not reviewed those reports as none of them had been sent to the defense by the Government.

The narrow question of law we have is whether the Government should have delivered copies of the West Street report and the underlying medical records of the November, 1974, report, embodied in Exhibits 27 and 28, respectively, when it became aware that it was going to use them and pursuant to counsels' informal agreement to exchange documents. If that question is answered in the affirmative, the question then is whether the court committed reversible error by failure to preclude the Govern-

---

**2.** Appellant was sentenced to a term of seven years on each count, to run concurrently, and a ten-year special parole term; he also faces deportation at the end of his imprisonment.

**3.** Rule 16(c) provided for limited discovery by the Government, specifically excluding work product and statements by the defendant or by witnesses to the defendant, his agents or attorneys. This provision appears in Rule 16(b)(2) of the current rules.

Informal mutual discovery has always been in the spirit, and is now explicitly encouraged by the language of, the Rule. As the Advisory Committee Note says:

The language of the rule is recast from "the court may order" or "the court shall order" to "the government shall permit" or "the defendant shall permit." This is to make clear that discovery should be accomplished by the parties themselves, without the necessity of a court order unless there is a dispute as to whether the matter is discoverable or a request for a protective order under subdivision (d)(1).

62 F.R.D. 271, 307–08 (1974). *See also* H.R. Rep.No.94–247, 94th Cong., 1st Sess. 12 (1975).

**4.** The Government suggests that Mr. Leitel was lax in not furnishing it with a copy of the March, 1975, report by a psychiatrist for the defense, but the record indicates that the Assistant United States Attorney had been shown the report by predecessor defense counsel Krinsky and thought it "basically consistent with" the Government's November, 1974, report.

ment from using those materials on cross-examination.

We have no difficulty whatever in concluding that the Government should have furnished to defense counsel copies of Exhibits 27 and 28 before it started to use them in cross-examination, indeed as soon as it came into possession of them. The material in both exhibits is clearly encompassed by "reports of physical or mental examination, and of scientific tests" of Rule 16(a), and Rule 16(g) placed a continuing duty on the part of the Government to "promptly notify the other party or his attorney or the court of the existence of the additional material" which had been "previously requested or ordered which [was] subject to discovery or inspection under the rule."[5] *See* note 1 *supra.* The spirit of old Rule 16, made explicit in new Rule 16, that the parties themselves will accomplish discovery without need of motion or court order, clearly contemplated that if there were an informal agreement to exchange medical reports,[6] the duties of disclosure would carry forward.

Concluding that the Government fell short in performing its duty, the question remains as to what then became the duty of the trial court. Rule 16(g) gave the trial court authority to require the discovery or inspection of the materials not previously disclosed, to grant a continuance, to prohibit the introduction of the undisclosed mate-

rial into evidence, or to enter such other order "as it deems just under the circumstances." Note 1 *supra.* As the Notes of the Advisory Committee on Rules state, this portion of subdivision (g)

> gives wide discretion to the court in dealing with the failure of either party to comply with a discovery order. Such discretion will permit the court to consider the reasons why disclosure was not made, the extent of the prejudice, if any, to the opposing party, the feasibility of rectifying that prejudice by a continuance, and any other relevant circumstances.

39 F.R.D. 69, 178 (1966). In other words, appellant's argument is reduced to the proposition that the failure to preclude the Government from questioning Dr. Rendon about his review of the material contained in Exhibits 27 and 28 was an abuse of discretion. We do not find it so.

█ Appellant failed to protect himself in any meaningful manner. When Exhibit 27 was marked for identification, and Dr. Rendon was asked on cross-examination whether he had reviewed the exhibit, defense counsel did not object. When Exhibit 28 was marked for identification, counsel objected at the side bar on the basis that the records had not been made available to him and moved that the Government be precluded from making reference to the documents contained in that exhibit. However, he never asked for a recess, let alone a

---

**5.** Exhibit 28 consists of (1) doctor's progress notes and nursing notes, (2) reports of examinations which were included in the November, 1974, report that was disclosed to defense counsel, and (3) notes and drawings apparently from the various psychological tests that were administered. To the extent that the November, 1974, report contained or referred to Exhibit 28, the Government may be considered to have "notif[ied] the other party . . . of the existence of the additional material" in accordance with Rule 16(g), though clearly the better practice would have been to disclose to the defense the notes and drawings from the tests. There is no doubt that the doctors' progress and nursing notes should have been disclosed.

Government counsel was incorrect in his claim to the trial court that he was not required to disclose the contents of Exhibits 27 and 28 because the reports were not made "in contem-

plation of trial." Clearly the reports were "made in connection with the particular case," and as such should have been disclosed pursuant to Rule 16(a), note 1 *supra.*

**6.** It makes no difference that neither party ever specifically requested medical reports relating to competency or insanity; such material is within the scope of Rule 16(a) and was exchanged. Thus both sides were bound by a continuing duty to disclose any reports acquired after the general requests for documents.

We also find no merit in the argument that the Government was not obliged to disclose the reports which were received subsequent to Dr. Rendon's examination of appellant. Rule 16(g) specifically states that the duty to disclose continues "prior to or during trial." *See* note 1 *supra.*

continuance, to give his doctor an opportunity to examine the records. Whether or not the contents of those exhibits would have supported appellant's case, Dr. Rendon's testimony would have been strengthened by a statement that his conclusions were not at all changed after reviewing the documents. In other words, any prejudice could perfectly well have been rectified by a recess. Absent such a request the court cannot be faulted for having denied the request to preclude the Government from alluding to the material in question.

■ Furthermore, even if we assume, *arguendo*, that the district court should not have allowed the Government to use Exhibits 27 and 28, the court still committed no more than harmless error. *United States v. Crisona*, 416 F.2d 107, 115 (2d Cir. 1969). *See also United States v. Johnson*, 525 F.2d 999, 1005 (2d Cir. 1975); *United States v. Williams*, 523 F.2d 407, 409 (2d Cir. 1975). *But cf. United States v. Padrone*, 406 F.2d 560 (2d Cir. 1969). There is ample evidence in the record other than that concerned with Exhibits 27 and 28 undermining the weight of Dr. Rendon's testimony. He did not watch the videotapes made of appellant during times pertinent to the arrest; he did not listen to the tapes from the same period to see if they verified his interpretation of the transcripts; he did not inquire as to the existence of any records from the West Street Detention Center, even though that was where he interviewed appellant; and he did not attempt to verify appellant's statements that appellant had been institutionalized for mental illness at previous times in his life. In addition, Dr. Rendon's testimony was not very persuasive. For example, on direct examination he stated that appellant "has been possibly mentally disturbed from adolescence" but that "I cannot commit myself to a definite opinion about his mental health [from November, 1973, until his arrest in January, 1974]. If my suspicion is correct, this man has had a mental disturbance, fluctuating, and I cannot say how he was at the time during those months." Finally, "It is obvious that after the arrest he was very disturbed, very sick, but that does not mean that he was like that before the report [made two weeks after his arrest]." In contrast, the Government's rebuttal psychiatrist, Dr. Abrahamsen, had watched the videotapes and concluded that appellant "certainly didn't have amnesia," that "[i]t certainly shows that this man knew exactly what he was doing . . . that he certainly had all the mental powers necessary to do what he set out to do," and that the plan for selling cocaine was "a well conceived plan. In such a plan you are not psychotic or insane." Abrahamsen also testified that appellant "is a man who can play up very well his symptoms," and that "I do believe that this man was playing that he didn't remember this and didn't remember that so that he didn't remember what happened in November, December and January." In this situation, we believe that any prejudice to appellant's case by the Government's use of Exhibits 27 and 28 was harmless.

It is unfortunate that this appeal has been marred by disputes between counsel as to the extent of the verbal agreement to disclose relevant documents. Our ruling that requires the Government to honor its agreement, just as we would require defense counsel to honor its counter-agreement, implicit now in the amended rule, is designed to insure that at least in the future these discovery agreements, if intended to vary from the discovery contemplated by the rules, will be reduced to writing and so specify.

Judgment affirmed.