Ida ARTHUR, Plaintiff,

v.

ATKINSON FREIGHT LINES CORP.,
and Jerzy S. Mroz, Defendants.

No. 94 Civ. 6927 (RO).

United States District Court,
S.D. New York.

Nov. 22, 1995.

Steven Wildstein, Great Neck, for Plaintiff.

Ginsberg, Becker & Weaver (David M. Ginsberg, of counsel), New York City, for Defendant.

## MEMORANDUM AND ORDER

OWEN, District Judge.

During the direct testimony of plaintiff's treating doctor at the trial, it developed that he had failed to turn over to the defense 90% of his records regarding plaintiff's treatment, although in receipt of a standard and proper authorization furnished by plaintiff's counsel for all "medical records." I ordered the balance of the records produced and granted a continuance of the trial for one week. The defendants' doctor, however, was thereby caused a loss because he had set aside the next day to testify and had cancelled paying patients. Upon the resumption of the trial, I was told he was billing defense counsel $2,500.00 for that lost day. Before me now is defendants' application for an order requiring reimbursement for this consequence.

Plaintiff was injured in a motor vehicle accident on January 12, 1994. The day following the accident, plaintiff started a lengthy period of treatment at the Greater Metropolitan Neurology Services ("Metropolitan"). In the course of trial preparation, defendants' counsel obtained from plaintiff's counsel the said authorization signed by

plaintiff, sent it on to Metropolitan, and in response, received five pages of test results and the two-page typed report of Dr. Friedman, one of the physicians that saw plaintiff at Metropolitan.

The trial of this action began on October 30, 1995. On the second day of trial, during the direct examination of Dr. Friedman, plaintiff's treating physician, defense counsel, following up on a similar and foreshadowing concern of a day earlier, brought to my attention that plaintiff's counsel had failed to turn over Metropolitan medical records, including Dr. Friedman's and other Metropolitan doctors' handwritten progress notes made during sixteen examinations of the plaintiff, as well as the results of one of plaintiff's magnetic resonance imaging ("MRI") evaluations, and a psychological evaluation. After discussion with counsel, I continued the trial for one week so that there could be proper compliance with the turnover authorization and time for the defense to prepare for cross-examination of plaintiff's doctor, as well as to enable defendant's own doctor to study the to-be-completed record.

When we reconvened a week later, defense counsel, had not only received over sixty-three more pages of medical records from plaintiff's counsel, but also a $2,500.00 bill for its expert's lost time. The defense moved to impose this cost on plaintiff. In response, plaintiff's counsel makes several arguments. With respect to many of the test result documents, plaintiff's counsel first suggests that he was under no duty to provide them to his adversary since they were irrelevant to plaintiff's claims, and he had no intention of inquiring into these areas. Second, he argues that defendant was under a duty to make successive requests for updated medical records from Metropolitan. With respect to the

failure to turn over the progress notes, plaintiff's counsel suggests—and plaintiff's doctor asserts—that progress notes are not generally viewed as "medical records," and that in any event, it is defendants' responsibility to specifically request these notes from the plaintiff if they are found to be missing.

■ Plaintiff's arguments border on the frivolous. Fed.R.Civ.P. 26(e) places an affirmative duty on an attorney to fully disclose and then supplement disclosure to his adversary.[1] Plaintiff's attorney was certainly aware that his client had continued to go to Metropolitan long after Metropolitan's initial response to the authorization for medical records and that therefore, further records were being generated. A party may not free itself of the burden to fully comply with the rules of discovery by attempting to place a heretofore unrecognized duty of repeated requests for information on its adversary. Plaintiff's counsel suggests that because he was unaware of the existence of a medical report in his doctor's possession, he is therefore free to withhold it from his adversary without facing adverse consequences. Rather, the federal discovery rules place a duty on a party to turn over not only proper materials of which he is aware, but also those of which he reasonably *ought* to have been aware. Here, plaintiff's counsel was aware that the file was building up and indeed had the whole file in his possession in the later stages of trial preparation.

■ Plaintiff's contention that he was under no duty to turn over some of the undisclosed medical reports and records to his adversary on the ground that he did not view such material to be relevant to the *plaintiff's* case is similarly meritless.[2] The disclosure

---

1. Fed.R.Civ.P. 26(e) provides:

   A party who has ... responded to a request for discovery with a disclosure or response is under a duty to supplement or correct the disclosure or response to include information thereafter acquired ... (a) if the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing....

2. Regarding the undisclosed psychological evaluation of the plaintiff, plaintiff's counsel conceded the value of this report to his adversary in the following colloquy:

   PLAINTIFF'S COUNSEL: We are not calling in the psychologist ... For the record your Honor, that is not being offered into evidence and the doctor will not be even referring to it.

         *     *     *     *     *     *

   THE COURT: I have looked at this. I can see why you wouldn't be calling this person.

   PLAINTIFF'S COUNSEL: According to this report [plaintiff] did not complain about prob-

provisions in the Federal Rules of Civil Procedure do not permit a party to trim his duty of disclosure to suit his own view of what might be relevant to his adversary. As the trial record reveals, certain of the undisclosed medical records were of value to defense counsel in the trial and were well within the scope of discovery as provided in Fed.R.Civ.P. 26(b)(1).[3] Therefore, the plaintiff should have turned them over to the defense in a timely fashion.

■ Plaintiff's final contention that Metropolitan's doctors' progress notes were not disclosed to defendants because they did not constitute "medical records" is frivolous. My immediate astonishment at this assertion at trial finds complete support in *United States v. Pineros*, 532 F.2d 868, 870–71, n. 5 (2d Cir.1976).[4] Moreover, in a personal injury context, nothing could more accurately be described as a "medical record" than the doctor's handwritten notes of the patient's condition made during the plaintiff's physical examination and later relied upon. A failure

to disclose that which is properly discoverable exposes the delinquent party to sanctions.

■ I now turn to defendants' application for sanctions under Fed.R.Civ.P. 37(c)(1).[5] In light of the foregoing, plaintiff's disclosure of only seven of some seventy pages of medical reports, progress notes and test results was inexcusable. Since the interests of justice required that the trial of this action be continued for one week, the proximately-caused loss suffered by defendants' expert witness, for which billing was appropriate, must fall on plaintiff's counsel.[6] It was ultimately the responsibility of plaintiff's counsel to diligently maintain control over his side of the discovery process to insure that all discoverable medical records were made available to his adversary. The district court has wide discretion in sanctioning a party for such a failure. *Outley v. City of New York*, 837 F.2d 587, 589 (2d Cir.1988). Thus, without addressing any question of bad faith on the plaintiff's side, I grant defendants' appli-

lems with her memory since the accident. The report in various places indicates that the accident did not cause any effects upon her, she had no change whatever, and it ends up saying that she is functioning within the average range according to the results of the current neurocognitive evaluation, which from the plaintiff's attorney's point of view would not seem to me to be helpful in this case ... We are not claiming a neurocognitive impairment, period; we are claiming neurological injuries to the lower back, the right leg, and the headaches....

&ast; &ast; &ast; &ast; &ast; &ast;

THE COURT: But if you are in a car accident—and, as I say, I am not trying this case for the defense—but it seems to me if [defense counsel] learned that a person is claiming neurological damage to one part of the body—
PLAINTIFF'S COUNSEL: Lower back.
THE COURT:—it would be fully appropriate to cross-examine the person who is asserting that to the doctor—
PLAINTIFF'S COUNSEL: I don't have a problem with that, your Honor.
THE COURT:—that there was no neurological damage to another part of the body.
PLAINTIFF'S COUNSEL: I don't have any problem with that.
THE COURT: Then this report becomes cross-examination material of the first order.
PLAINTIFF'S COUNSEL: I agree.

3. Fed.R.Civ.P. 26(b)(1) provides that
[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the

subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party ... [t]he information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

4. In *Pineros*, the court had "no difficulty whatever in concluding" that in a criminal trial, where the parties had informally agreed to exchange medical records, "[t]here is no doubt that the doctors' progress and nursing notes should have been disclosed" pursuant to that agreement. 532 F.2d at 871, n 5.

5. Fed.R.Civ.P. 37(c)(1) provides:
[If a] party ... without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) ... the court, on motion and after affording an opportunity, may impose other appropriate sanctions. In addition to requiring payment of reasonable expenses, including attorney's fees, caused by this failure, these sanctions may include ... informing the jury of the failure to make the disclosure.

6. This Court is not unmindful of the fact that an adjournment of trial may occur due to circumstances beyond the control of the parties. Obviously, in such a case where neither party is at fault, each must bear the burden of its own expenses.

**22**

cation to the extent that plaintiff's counsel is to pay $1,000.00 to defendants, which I conclude is sufficient, given a doctor's probably on-going patient flow, to cover the doctor's losses described above.

The foregoing is so ordered.