The **HARTFORD INSURANCE COMPANY, as Subrogee**

v.

**GENERAL ELECTRIC COMPANY, et al.**

**Eugenia Carvalhal**

v.

**General Electric Company, et al.**

**C.A. Nos. 06–362S, 07–007S.**

United States District Court, D. Rhode Island.

Dec. 7, 2007.

Erik Loftus, Law Office of Stuart Blackburn, Windsor Locks, CT, Kevin S. Cotter, Richard Ari Van Tienhoven, Van Tienhoven & Cotter, Ltd., Providence, RI, for Hartford Insurance Company.

Dominick Savaiano, Rodd E. Elges, Clausen Miller, P.C., Chicago, IL, Joseph–Anthony Dimaio, McKinnon & Harwood, Pawtucket, RI, for General Electric Company, et al.

Mark W. Dana, Law Office of Mark Dana, P.C., Robert A. D'Amico, II, D'Amico & Birchfield, LLP, Providence, RI, for Eugenia Carvalhal.

## DECISION AND ORDER

WILLIAM E. SMITH, District Judge.

These consolidated cases result from a house fire on February 27, 2004. In C.A. No. 06–362S, the homeowner's insurer, The Hartford Insurance Co. ("Hartford") brings a subrogation claim against Midea U.S.A., Inc. ("Midea") and General Electric Co. ("GE"), the manufacturer and distributor, respectively, of a GE-brand water dispenser. Hartford alleges that the water dispenser was defective and that the defect caused the house fire. The consolidated case, C.A. No. 07–007S, is brought by the homeowner against Midea and GE and seeks compensation for damages arising from the fire that were not covered or reimbursed by Hartford. On October 2, 2007, Magistrate Judge Lincoln Almond issued a comprehensive Report and Recommendation ("R & R") recommending that the Court grant Defendants' Motion to Preclude the Testimony of Plaintiffs' Expert Witnesses and for Summary Judgment ("Motion"), and enter final judgment in both cases in favor of Defendants as to all claims in Plaintiffs' Complaints. This matter is now before the Court on the objections of Hartford, GE, and Midea to Judge Almond's R & R.[1]

▮  Pursuant to Fed.R.Civ.P. 72, the Court must make "a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made...." *Id.* De novo review, however, does not contemplate consideration by the Court of arguments not seasonably raised before the Magistrate. *See, e.g., Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co.,* 840

---

1. There is a dispute as to whether the homeowner, Eugenia Carvalhal, having made the decision to rely on the expert testimony proffered by Hartford, has standing to object to

the Magistrate's R & R. The Court finds it unnecessary to decide this issue since no argument made by Carvalhal at the hearing on Hartford's objection alters the analysis herein.

F.2d 985, 991 (1st Cir.1988) (litigants may not "feint and weave at the initial hearing, and save [the] knockout punch for the second round"); *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987) ("Parties must take before the magistrate, not only their best shot but all of their shots.") (internal citation and quotation marks omitted).

Judge Almond's R & R thoroughly sets forth the pertinent facts underlying the Defendants' Motion and they will not be parroted here. However, the Court will add a few words in order to deal with the parties' objections. For the following reasons, the Court adopts Judge Almond's R & R in its entirety.

## I. *Hartford's Objection*

Hartford objects to the Magistrate's determination that Michael Cooney and Ara Nalbandian, Hartford's causation experts, should be precluded from testifying on the ground that their expert report provided no scientific basis for their causation theory. R & R at 11. Hartford further objects to the Magistrate's recommendation, based on the exclusion of the causation experts' testimony, that the Court enter summary judgment for Defendants.

At least since the Supreme Court's decision in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), it has been axiomatic that District Courts are charged with the responsibility to exclude unreliable expert testimony. *Id.* at 597, 113 S.Ct. 2786; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) (District Court responsibility extends to all expert testimony, not just scientific expert testimony). Expert testimony must be shown to be based on more than the subjective belief or unsupported speculation of the expert. *Daubert*, 509 U.S. at 590, 113 S.Ct. 2786. The burden of laying the proper foundation for admission

of the expert testimony is on the proponent of the expert testimony, and its admissibility must be shown by a preponderance of the evidence. *Daubert*, 509 U.S. at 592 n. 10, 113 S.Ct. 2786; *see also Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir.1999). With respect to its causation experts, Hartford failed to satisfy this stringent standard and consequently the causation experts' testimony is properly excluded.

This is a product liability case premised on a defective water dispenser. The causation experts' joint report characterized the defect as "the presence of high chlorine levels in the insulation on the hot water tank/heater assembly." Nalbandian/Cooney Report at 7. According to the report, the chlorine produced "cracking and corrosion pitting" of the hot water tank which eventually resulted in water leakage from the tank. *Id.* at 8, 9. Based as it was on apparently methodical scientific testing, this opinion is uncontroversial with respect to how it was formed. However, the report continued on to opine that the corrosion would have caused the water dispenser's heat sensor to malfunction, possibly resulting in a continuously operating heating element and eventual fire. Nalbandian/Cooney Report at 8. As Judge Almond noted, the report provides no scientific support for this heat sensor malfunction theory. R & R at 8–9. Although Hartford contends that Judge Almond failed to properly consider the cause experts' "articulation" of their opinion in their depositions, the Court is satisfied that Judge Almond did consider the deposition testimony and properly concluded that the testimony does not support the experts' causation opinion.

Moreover, at his deposition, Mr. Cooney actually expanded on the expert report, testifying that an unspecified failure in the heating system, not necessarily a malfunc-

tion specific to the heat sensor, could have caused the fire. In any event, as set forth in Judge Almond's well-reasoned analysis, the deposition testimony reveals that the experts have no sound basis to draw the conclusion that the fire was caused by a malfunction in the water dispenser's heating system, let alone the heat sensor. The experts are not trained as electricians and performed no testing of the heating system. Although Hartford argued at oral argument that the electrical system was destroyed to the point that no analysis by the experts was possible, the expert report describes a detailed examination of the heater assembly, including observations that "[e]vidence of damage or degradation to the heating coil was not observed," and "[e]vidence indicative of electrical arcing or shorts was not observed." Hartford also had access to an exemplar of the heating element on which it could have, but did not, conduct additional testing. The net result, as Judge Almond found, is that the experts could draw no line between the alleged defect and the ignition of the fire.

Furthermore, at the least, this change in the experts' opinion required Hartford to supplement the earlier disclosed expert report prior to the expert depositions in order to provide Defendants the opportunity to review and analyze the methodology of the witnesses. However, Hartford did not, and apparently still has not, provided Defendants with the required supplementation. Hartford's counsel took the position at oral argument that the expert deposition testimony was sufficient notice of the changed conclusion (really a new theory altogether). This is just dead wrong. The mandate to supplement is an *affirmative* duty not satisfied simply by making an expert available for deposition. *See* Fed.R.Civ.P. 26(e) ("A party who has made a disclosure under subdivision (a) or responded to a request for discovery with a disclosure or response is under a duty to supplement or correct the disclosure or

response to include information thereafter acquired . . . ."); *see also Arthur v. Atkinson Freight Lines Corp.,* 164 F.R.D. 19, 20 (S.D.N.Y.1995) ("Fed.R.Civ.P. 26(e) places an affirmative duty on an attorney to fully disclose and then supplement disclosure to his adversary.").

Even if Hartford had provided a supplement, as required by Fed.R.Civ.P. 26(e), recasting the expert report as supporting the alternative opinion that the fire may have been ignited by an electrical short consequent to the heating or electrical system being exposed to water leakage and concomitant corrosion, this would be too little to save the testimony from exclusion because the conclusion is nothing more than rank speculation. This theory is not borne out by the whole of the experts' report or deposition testimony. Moreover, the purpose of supplementation is not to introduce wholly new opinions. *See, e.g., Metro Ford Truck Sales, Inc. v. Ford Motor Co.,* 145 F.3d 320, 324 (5th Cir.1998) (testimony of late-designated expert properly excluded); *Keener v. United States,* 181 F.R.D. 639, 642 (D.Mont.1998) (expert limited to opinions expressed in initial disclosure and precluded from testifying on other matters set forth in "supplemental" disclosure).

Finally, if all this is not enough, Hartford takes the position that it was somehow hamstrung by Judge Almond because he did not allow for an evidentiary hearing in which the experts could explain and defend their opinion. But this misstates the record. Hartford never properly requested an evidentiary hearing as required by Local Rule CV 7(e). If Hartford planned to put forward an opinion that the fire may have been caused by an electrical arc or short, which was not the opinion proffered by the causation experts in their report or deposition testimony, it should have, as a practical matter, requested an

evidentiary hearing prior to the hearing on Defendants' Motion. Further, when questioned at oral argument, counsel admitted that he did not request an evidentiary hearing from the clerk or Judge Almond. While it likely would have made no difference, Hartford cannot blame the Magistrate Judge for its own failure to follow proper procedures. *See, e.g., Teamsters, Chauffeurs, Warehousemen and Helpers Union, Local No. 59 v. Superline Transp. Co.*, 953 F.2d 17, 20 n. 4 (1st Cir.1992) (by not requesting, under local District of Massachusetts rule, either an evidentiary hearing or oral argument, party "waived any entitlement to such further proceedings"); *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1120 (1st Cir.1989) ("[W]e regularly turn a deaf ear to protests that an evidentiary hearing should have been convened but was not, where, as here, the protester did not seasonably request such a hearing in the lower court.").

In sum, the Court believes that Judge Almond correctly determined that the testimony of Hartford's causation experts should be excluded. In the absence of the testimony, no reasonable jury could find that the alleged defect in the water dispenser was the proximate cause of the house fire. Even if the Court were to allow the experts to testify to the relatively uncontroversial opinion that the alleged defect caused water leakage, such an opinion would only support a conclusion that the leakage resulted in water damage. For a jury to conclude that the leakage resulted in the ignition of a fire would require a logical leap not supported by the experts' report or subsequent testimony. Therefore, Hartford has not made a sufficient showing under Fed.R.Civ.P. 56(c) to preclude the entry of summary judgment for Defendants.

## II. *Defendants' Objection*

Defendants objected to the Magistrate's recommendation that the Court allow the testimony of Hossein Davoodi, Hartford's origin expert. In light of the forgoing analysis, Defendants' objection is moot and need not be discussed further.

## III. *Conclusion*

For the foregoing reasons, Hartford's Objection is DENIED and Defendants' Objection is DENIED as moot. The Court adopts Judge Almond's October 2, 2007 R & R in its entirety. Summary judgment is GRANTED in favor of Defendants on all counts.

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION

LINCOLN D. ALMOND, United States Magistrate Judge.

Before the Court is Defendants' Motion to Preclude the Testimony of Plaintiffs' Expert Witnesses and for Summary Judgment. (Document No. 42).[1] This Motion has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); LR Cv 72. Oral argument was requested by the parties and held on September 14, 2007. For the reasons discussed below, I recommend that Defendants' Motion be GRANTED.

## I. Background

These consolidated cases arise out of a house fire that occurred on February 27, 2004 in East Providence. In C.A. No. 06–362S, the homeowners' insurer, The Hartford Insurance Co. (the "Hartford"), brings a subrogation claim against the manufacturer, Midea U.S.A., Inc. ("Midea"), and distributor, General Electric Co. ("GE"), of a GE hot/cold water dispenser.

**1.** The same Motion is docketed as No. 17 in the Consolidated Case, C.A. No. 07–007S.

Hartford alleges that the water dispenser was defective and that the defect caused the house fire. In order to prevail on any of its claims, Hartford agrees that it must "prove that the water dispenser was defective and unreasonably dangerous and that the defect was the proximate cause of its damages." Document No. 47 at 23. Hartford's claimed damages are the payments (alleged to be in excess of $237,000.00) made to the insureds for fire damage. The consolidated case (C.A. No. 07–007S) is a tag-along case against Midea and GE brought by one of the insureds seeking compensation for her damages arising out of the fire which were not covered or reimbursed by the insurer.

Discovery in these cases has closed. During discovery, Plaintiffs identified three experts expected to testify on their behalf as to the origin and cause of the fire. Mr. Hossein Davoodi, a Certified Fire and Explosion Investigator, was engaged by Plaintiffs as their fire origin expert. Mr. Michael Cooney, a Metallurgical Engineer, and Mr. Ara Nalbandian, a Mechanical Engineer (both of Thielsch Engineering), were jointly engaged by Plaintiffs as their fire cause experts. Mr. Davoodi opines that the fire originated in the kitchen at the location of the water dispenser. Mr. Cooney and Mr. Nalbandian opine that the fire was caused by a defect in the water dispenser.

Defendants contend that the opinions of Plaintiffs' experts do not pass muster under the standards established by the Supreme Court in *Daubert* and *Kumho Tire* and should be excluded. If such expert evidence is excluded from evidence, Defendants contend that Plaintiffs cannot establish a *prima facie* case for any of their product liability claims, and the Court should enter summary judgment in their favor as to all of Plaintiffs' claims.

## II. Summary Judgment Standard

A party shall be entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When deciding a motion for summary judgment, the Court must review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Cadle Co. v. Hayes*, 116 F.3d 957, 959 (1st Cir.1997).

Summary judgment involves shifting burdens between the moving and the nonmoving parties. Initially, the burden requires the moving party to aver "an absence of evidence to support the nonmoving party's case." *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir.1990) (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986)). Once the moving party meets this burden, the burden falls upon the nonmoving party, who must oppose the motion by presenting facts that show a genuine "trialworthy issue remains." *Cadle*, 116 F.3d at 960 (*citing Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir.1995); *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 581 (1st Cir.1994)). An issue of fact is "genuine" if it "may reasonably be resolved in favor of either party." *Id.* (*citing Maldonado–Denis*, 23 F.3d at 581).

To oppose the motion successfully, the nonmoving party must present affirmative evidence to rebut the motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57, 106 S.Ct. 2505, 2514–2515, 91 L.Ed.2d 202, (1986). "Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party

rests merely upon conclusory allegations, improbable inferences, [or] unsupported speculation." *Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990). Moreover, the "evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve." *Id.* (*quoting Mack v. Great Atl. & Pac. Tea Co.,* 871 F.2d 179, 181 (1st Cir.1989)). Therefore, to defeat a properly supported motion for summary judgment, the nonmoving party must establish a trialworthy issue by presenting "enough competent evidence to enable a finding favorable to the nonmoving party." *Goldman v. First Nat'l Bank of Boston,* 985 F.2d 1113, 1116 (1st Cir.1993) (*citing Anderson,* 477 U.S. at 249, 106 S.Ct. 2505).

### III. Discussion

In *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the Supreme Court established four factors for the trial court to weigh in assessing the admissibility of expert scientific evidence under Fed. R.Evid. 702.[2] These factors are "(1) whether the theory or technique can be and has been tested; (2) whether the technique has been subject to peer review and publication; (3) the technique's known or potential rate of error; and (4) the level of the theory or technique's acceptance within the relevant discipline." *United States v. Mooney,* 315 F.3d 54, 62 (1st Cir.2002) (*citing Daubert,* 509 U.S. at 593–594, 113 S.Ct. 2786). In *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), the Supreme

Court held that this gate-keeping function also applies to technical and other specialized knowledge. "Although the approach is flexible by its nature (after all, expert testimony and the peculiar facts of each case so demand), the overarching concern is on the 'evidentiary relevance and reliability' of the proposed testimony." *Seahorse Marine Supplies, Inc. v. Puerto Rico Sun Oil Co.,* 295 F.3d 68 (1st Cir. 2002) (*citing Daubert,* 509 U.S. at 595, 113 S.Ct. 2786). "If proffered expert testimony fails to cross *Daubert's* threshold for admissibility, a district court may exclude that evidence from consideration when passing upon a motion for summary judgment." *Cortes–Irizarry v. Corporacion Insular De Seguros,* 111 F.3d 184, 188 (1st Cir.1997) (citations omitted). *See also* Margaret A. Berger, *Procedural Paradigms for Applying the Daubert Test,* 78 Minn. L.Rev. 1345, 1373–1374 ("The Court may not need to hear testimony from the experts if the methodological issues have been adequately explored at depositions.").

### A. The Origin Expert

█ Plaintiffs have identified Mr. Hossein Davoodi, PE, CFEI, as their fire origin expert. He opines that the house fire in question "originated at the southeast side of the kitchen where the water dispenser was located." Document No. 44, Ex. C–1 at 1. Mr. Davoodi based his origin opinion on an "examination of burn patterns and vector analyses at th[e] scene, examination of the [water dispenser], witness accounts, and information currently available. . . ." *Id.* Defendants argue that Mr. Davoodi failed to adequately investi-

---

**2.** Rule 702, Fed.R.Evid., provides that
[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the

form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

gate and document the fire scene; and failed to document, collect, evaluate and retain evidence that was key to his origin opinion. Plaintiffs argue, in response, that Mr. Davoodi's qualifications to offer a fire origin opinion are "impeccable" and his methodology for determining fire origin is accepted and commonly used within the fire investigation community based on "basic physics principles." (Document No. 47–1 at 15). Plaintiffs contend that any claimed failure by Mr. Davoodi to properly document the scene or collect evidence goes to the weight of his opinion, not its admissibility. *Id.*

In connection with my consideration of this issue, I have thoroughly reviewed Mr. Davoodi's resume, his expert report (with exhibits) and the substantial portions of his deposition testimony submitted by the parties. Based upon such review, Defendants have not convinced me that they are entitled, under *Daubert*, to an order precluding expert testimony from Mr. Davoodi. At the hearing, Defendants' counsel conceded that the "hardest part" of his argument is to establish that Mr. Davoodi is not qualified to render an expert opinion on the origin of the fire. I agree and find that Mr. Davoodi is qualified to testify as to the origin of the fire.

Mr. Davoodi's opinion is not "unsupported speculation" as argued by Defendants. First, Mr. Davoodi is more than competent to render a fire origin opinion. He has a Master's Degree in fire protection engineering and is a Registered Professional Engineer in the field of fire protection in three states. Further, he has been certified as a Fire and Explosion Investigator by the National Association of Fire Investigators and has investigated over 400 fires in his nearly twenty-year professional career. Davoodi Dep. at 35.

Defendants' next line of attack goes to the methodology of Mr. Davoodi's fire origin investigation and his conformance with NFPA 921. NFPA 921 is a guide for fire and explosion investigations published by the National Fire Protection Association. Mr. Davoodi conducted a fire scene examination on March 3, 2004 (less than a week after the fire) and documented his examination with photographs and several burn-pattern diagrams.[3] From a review of his expert report and deposition testimony, it is clear that Mr. Davoodi primarily relied upon the documented burn patterns to arrive at his opinion regarding the origin of the fire. Davoodi Report at 8.

Defendants contend that Mr. Davoodi failed to properly take and record measurements, failed to prepare accurate and "to scale" diagrams and failed to retain and properly rule out a coffee pot as a potential source of the fire. These arguments, however, are more appropriately aimed at the weight to be accorded Mr. Davoodi's opinion and not its admissibility. Although the First Circuit has approved the use of *Daubert* in connection with a motion under Fed.R.Civ.P. 56, it has cautioned that "the *Daubert* regime should be employed only with great care and circumspection at the summary judgment stage." *Cortes–Irizarry,* 111 F.3d at 188. "The ultimate credibility determination and the [expert] testimony's accorded weight are in the jury's province." *Seahorse Marine,* 295 F.3d at 81 (*citing Mitchell v. United States,* 141 F.3d 8, 16–17 (1st Cir.1998)). "Vigorous cross-examination, presentation of contrary evidence, and careful instruc-

---

3. NFPA 921 has an entire chapter devoted to fire patterns (Chapter 6) and, in the Chapter's introductory section (6.1.1), notes that "[o]ne of the major objectives of a fire scene examination is the recognition, identification, and analysis of fire patterns ... in an attempt to trace fire spread, identify areas and points of origin, and identify the fuels involved." Document No. 48, Ex. 4 at 921–30.

tion on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert,* 509 U.S. at 596, 113 S.Ct. 2786.

### B. The Cause Experts

■ Plaintiffs' cause experts, Mr. Ara Nalbandian and Mr. Michael Cooney, issued a joint report on September 29, 2004. At the hearing, Hartford's counsel asserted that these experts "place th[e] defect directly in the manufacturer's inclusion of chloride-rich insulation around the hot water tank" of the water dispenser. In particular, the experts identified, through testing, "the presence of high chlorine levels in the insulation on the hot water tank/heater assembly." Nalbandian/Cooney Report at 7. This led to "cracking and corrosion pitting" of the stainless steel hot water tank and resulting water leakage. *Id.* at 8, 9.

Defendants do not contest the admissibility of this portion of the Nalbandian/Cooney expert opinion. Defendants do, however, contest the admissibility of their opinion that this water tank defect caused the fire in question.

The starting point to evaluate the Nalbandian/Cooney opinion is their detailed expert report dated September 29, 2004. The report concludes that "[b]ased upon the results of the inspection and examinations, it is apparent that improper design and assembly of the GE water dispenser, using insulation with an extensive chloride content, contributed to and/or caused the failure of the unit and the resultant fire." Nalbandian/Cooney Report at 9. From their review of the water dispenser, they noted "[a] significant accumulation of corrosion product/deposit was evident at the temperature sensors" and that "[e]vidence indicative of electrical arcing or shorts was *not* observed." *Id.* at 4. (emphasis added). Mr. Nalbandian and Mr. Cooney then articulated a detailed opinion as to exactly

how the insulation defect/water leak caused the fire. They opined that:

> [t]he oxide generated by the corrosion reaction would have acted as an insulator and prevented proper functioning of the sensors. If the sensors did not send the proper signal back to the relay switch to indicate that the water in the tank had reached its set point, the heater would have remained on continuously. The heat generated from the heater being on continuously combined with water leaking from the cracks and corrosion pits at the top of the hot water tank could have generated enough heat to ignite combustible plastic in the water dispenser or adjacent combustible material in the kitchen.

*Id.* at 8.

In their report, Mr. Nalbandian, a Mechanical Engineer, and Mr. Cooney, a Metallurgical Engineer, detailed the scientific testing they conducted to form their opinion that the inclusion of high chloride external insulation on the hot water tank was a defect and led to corrosion and cracking of the tank. Their report does not, however, provide similar scientific support for their heat sensor malfunction theory. Mr. Cooney conceded at his deposition that he was not an "electrical expert," Cooney Dep. at 104, and there is nothing in Mr. Nalbandian's resume or deposition testimony to suggest he is an electrical expert.

It is apparent from a close review of Mr. Nalbandian's and Mr. Cooney's deposition testimony that they could not support or defend their causation opinion. For instance, Mr. Nalbandian agreed that the "sequence of events" leading to the fire was that "water leaked out of the tank, it corroded the sensors, the sensors malfunctioned and allowed the heating unit to run continually." Nalbandian Dep. at 146. When asked the scientific basis for his opinion as to the sensors, Mr. Nalbandian

testified that "[w]e didn't say they didn't properly operate" but that corrosion from the leakage did not allow them "to properly function, and in the view of not being able to properly function, you would have the resultant fire." *Id.* at 153–154. Mr. Nalbandian was not, however, "aware of the details" as to how the heat sensors worked, *id.* at 156, did not determine "how hot the heating element" would get if it ran continuously, *id.* at 134,[4] and did not determine the fire ignition point of the water dispenser components. *Id.* at 147–149. Similarly, when asked about the opinion that "the heater coil generated sufficient heat to cause localized burning," Mr. Cooney had to back track and testified that "[i]t should be amended to say the heating system, not necessarily the heater coil." Cooney Dep. at 101. Mr. Cooney was also unable to provide any concrete support for the heat sensor theory, *id.* at 139–144, and could not identify to a reasonable degree of scientific certainty either a heat source or fuel source (excluding oxygen). *Id.* at 142–143.

These deficiencies forced Hartford's counsel to concede at argument that "at this point we need to forget about the heat sensor." Plaintiffs then attempted to rehabilitate the Nalbandian/Cooney cause opinion by casting a broader net and arguing that a water leak in an electrical device will necessarily cause a fire. As support, Hartford's counsel essentially asked me to take judicial notice of this analytical leap by arguing at the hearing, without citation to any supporting authority as required by Fed.R.Evid. 201(d), that it is a "basic tenet of any material performance academia that electrical components when exposed to corrosion and water will short and cause fires."

In *Daubert,* the Supreme Court noted that scientific knowledge "connotes more than subjective belief or unsupported speculation." 509 U.S. at 590, 113 S.Ct. 2786. "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Ruiz–Troche v. Pepsi Cola of P.R. Bottling Co.,* 161 F.3d 77, 81 (1st Cir.1998) (citation and internal quotation marks omitted). This is such a case. While I am cognizant of the First Circuit's cautionary instruction regarding the use of *Daubert*'s gate-keeping regime in connection with summary judgment, I am also convinced that this is one of the "clearcut cases" in which it is appropriate to do so. *See Cortes–Irizarry,* 111 F.3d at 188 ("given the complex factual inquiry required by *Daubert,* courts will be hard-pressed in all but the most clearcut cases to gauge the reliability of expert proof on a truncated record"). In its Fed.R.Civ.P. 26(a)(2)(B) expert reports, Hartford informed Defendants that Mr. Cooney and Mr. Nalbandian would testify that "the water dispenser was improperly designed and/or assembled so that the heater coil ... generated sufficient heat to cause localized burning and the resulting fire." Document No. 46, Exs. B and C at 1–2. *See also Dunkin' Donuts Inc. v. Patel,* 174 F.Supp.2d 202, 211 (D.N.J.2001) ("The test of a report is whether it is sufficiently complete, detailed and in compliance with the Rules so that surprise is eliminated, unnecessary depositions are avoided, and costs are reduced."). In view of the clear focus in the expert disclosure and report on the "absence of proper temperature sensor response," it

---

**4.** Although the water dispenser was heavily damaged in the fire, it is undisputed that the experts had access to certain exemplar water dispensers, but did not conduct further testing.

certainly came as a surprise to me when Hartford's counsel shifted gears at the hearing and told me to "forget about the heat sensor." If I forget about the heat sensor, then I must also forget about the only theory of causation proffered by Mr. Cooney and Mr. Nalbandian in their report. The bottom line is that their expert report did not provide a scientific basis for the heat sensor causation theory, and the theory did not withstand scrutiny when examined at their depositions. It is no more than unsupported speculation, and is thus inadmissible.

Accordingly, I recommend that the District Court preclude testimony from Plaintiffs' cause experts and GRANT Defendants' Motion for Summary Judgment. In the absence of such expert evidence and in view of the expiration of the period for expert witness disclosure and discovery, Plaintiffs have not otherwise identified competent evidence upon which a reasonable jury could find that the alleged defect in the water dispenser was the proximate cause of the house fire in question. Without such evidence, the jury could only impermissibly speculate as to the actual cause of the fire. Plaintiffs have simply not made a sufficient showing under Fed. R.Civ.P. 56(c) to preclude the entry of summary judgment for Defendants.

## IV. Conclusion

For the foregoing reasons, I recommend that the District Court GRANT Defendants' Motion to Preclude the Testimony of Plaintiffs' Expert Witnesses and for Summary Judgment. (Document No. 42).[5] I also recommend that the District Court enter FINAL JUDGMENT in both of these Consolidated Cases (C.A. No. 06–362S and C.A. No. 07–007S) in favor of Defendants as to all claims in Plaintiffs' Complaints.

5. The same Motion is docketed as No. 17 in

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10) days of its receipt. *See* Fed.R.Civ.P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. *See United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 605 (1st Cir.1980).